UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTHONY BUCCA, an individual; LILIAN BUCCA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INDEMNITY INSURANCE,<br><br>Defendant. | Case No. 2:14-cv-01903-APG-PAL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFFS' MOTION FOR LEAVE**<br><br>(ECF Nos. 40, 57) |

Plaintiffs Anthony and Lilian Bucca claim two expensive pieces of jewelry were stolen from their apartment in Las Vegas. The jewelry was listed on their renter's insurance policy, so the Buccas filed a claim with their insurer, defendant Allstate Indemnity Insurance. Allstate's investigation called into question the veracity of the Buccas' story and Allstate denied their claim.

The Buccas sued Allstate for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and bad faith. Allstate moved to dismiss or for summary judgment, arguing that the Buccas breached their obligations under the policy and they never owned the jewelry. Approximately eight months after Allstate filed its motion, the Buccas moved for leave to supplement their opposition with a deposition transcript.

Both parties presented matters outside the pleading, so I will convert Allstate's motion to dismiss into a motion for summary judgment. Because Allstate had a reasonable basis to deny the Buccas' claim, I grant summary judgment on the Buccas' claims for bad faith and breach of the implied covenant. Questions of fact remain regarding the materiality of the Buccas' alleged breaches of the contract. Thus, I deny that portion of Allstate's motion. I also deny the Buccas' motion for leave because it is untimely and fails to cite to relevant portions of the 100-page deposition transcript.

/ / / /

I. **BACKGROUND**

Lilian and Anthony Bucca purchased a renter's insurance policy from Allstate and scheduled two pieces of jewelry on it: (1) a 3.02 or 3.01 round cut diamond, and (2) a 17-inch strand of Mikimoto pearls. ECF Nos. 40-2; 40-6 at 8; 40-7. The Buccas allegedly purchased both pieces of jewelry at Asanti Fine Jewelers, Inc. ECF No. 40-7. A receipt for the pearls shows that Anthony made four payments in the amount of $9,000 per payment. *Id.* However, the same receipt also states Anthony "paid in full" the total price of $34,790.75. *Id.* A receipt for the diamond shows that it cost $48,600 (plus $3,519.75 in tax) and that Anthony paid for it by (1) trading in a 2.01 carat diamond worth $12,500 and (2) submitting four cash payments for $9,000 and one cash payment for $3,619.75. *Id.*

Sometime between October 1, 2013 and October 19, 2013, the diamond and pearls were allegedly stolen, along with two pieces of unscheduled jewelry (a pair of diamond stud earrings and a men's Movado wedding ring). ECF No. 40-7 at 7–9. The Buccas reported to the police that they had accidentally left the jewelry out while workman were in their apartment making repairs. *Id.*

On October 23, 2013, Anthony called Allstate and claimed that the pearls and diamond had been stolen. ECF Nos. 40-1, 40-2. Allstate investigated and took Anthony's recorded statement twice, which revealed the following facts: (1) Anthony regularly kept the jewelry in a bathroom drawer that he shared with Lilian, even though they both had their own safes; (2) Anthony waited three days before reporting the jewelry missing; (3) according to the police investigation, the jewelry did not turn up in any pawn shops; and, (4) Anthony did not report the workers' names to the police. *See* ECF No. 40-8.

In November, Allstate provided the Buccas with guidelines for making a claim and requested proof of ownership of the jewelry, names and contact information for the workers, alarm records, cell phone records, and a time to schedule Lilian's recorded statement. *See* ECF Nos. 40-2, 40-14. In December, the Buccas responded to Allstate's requests through their attorney and provided the two receipts for the jewelry, an appraisal of the jewelry by Richard

Baron, a sworn statement in proof of loss, and the names and contact information for the workers. ECF Nos. 40-15; 40-17. But the Buccas did not provide alarm or cell phone records. ECF No. 40-17.

Allstate hired a private investigator, James Ash, who interviewed the workers. ECF No. 40-16. Ash's interviews produced nothing suspicious, but he discovered that the Buccas used to own a jewelry business (American Jewelers) that was not previously disclosed to Allstate. *Id.* In February 2014, Anthony sat for an examination under oath (EUO) and agreed to produce Lilian's 2012 tax return, any brokerage or 401k statements, American Jewelers' inventory sale list, the lease agreement for American Jewelers, and pictures of the diamond and pearls. *See* ECF No. 40-8; ECF No. 40-16 at 17. He also testified that he bought the diamond wholesale. ECF No. 40-8.

Allstate attempted to take Lilian's EUO, first in February and then in March, but the examination had to be rescheduled each time. *See* ECF Nos. 40-17; 50-8; 50-10; 50-14. After the second attempt, the Buccas' attorney informed Allstate that Anthony and Lilian had moved to the Philippines permanently, where Lilian was born. ECF No. 50-14.

An Allstate adjuster continued the investigation and located Nelson Holdo, the owner of Asanti Fine Jewelers, where the Buccas allegedly bought the diamond and pearls. ECF Nos. 40-2 at 21–22; 40-19 at 5–13. Holdo stated that Asanti had since closed and (1) he had no recollection of the Buccas and he remembered all of his customers; (2) the receipts were not initialed at the bottom, as was customary; (3) the receipts were not made in his or his wife's handwriting, who were the only two sales people who would have sold the jewelry; (4) Holdo did not allow customers to make payments over several months, as the Buccas' receipts indicated; (5) Holdo would have remembered the Buccas' large cash payments because his business was in trouble in 2010; (6) Holdo generally sold higher quality diamonds than the one identified on the receipt; (7) a sales tax would not have been added to the diamond if it was purchased wholesale; and (8) the receipts produced by the Buccas were never used by Holdo because his business closed before those particular receipts were used (each receipt was numbered). ECF Nos. 40-2 at 21–22; 40-19 at 5–13.

Allstate contacted the bankruptcy trustee for Asanti and, after reviewing the company's records, discovered that Asanti kept a list of customer names but the Buccas were not listed, and the Quick Books records show that the receipts produced by the Buccas were never used. ECF No. 40-19 at 5–13. An associate of the bankruptcy trustee also discovered that Antony purchased display cases and jewelry at Asanti's bankruptcy auction, but not the diamond and pearls. ECF No. 40-23 at 15–17.

Allstate also investigated the Baron appraisal. Baron said that he did not remember doing the appraisal and that he kept records of his appraisals but had no records for the Buccas' appraisal. ECF No. 40-3 at 20. Ultimately, Allstate denied the Buccas' claim, asserting that they failed to comply with Allstate's investigation and misrepresented their ownership of the jewelry. ECF No. 40-24 at 2–3.

In May 2015, Anthony and Baron were deposed. Both testified that, on at least one occasion, they visited Asanti together. Holdo was also deposed and stated that he did not prepare the Quick Books records for his company and, at one point, $1.4 million of inventory was missing. ECF Nos. 52-1; 52-3. During the course of discovery, the Buccas produced (1) hotel records showing that Anthony and Lilian stayed at a Hyatt hotel near Asanti on the dates they allegedly bought the diamond and pearls, (2) an "Original Note" from Holdo, and (3) a "How to Buy a Diamond" guide from Asanti.

## II.   ANALYSIS

In considering a motion to dismiss, I am prohibited from considering matters outside the pleadings unless I convert the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Because both parties have presented matters outside the pleadings, I will convert Allstate's motion into a motion for summary judgment. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it might affect the outcome of the suit under the governing law." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view all evidence and inferences which may be drawn therefrom in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Breach of Contract

To state a claim for breach of contract in Nevada, a plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000).

The Buccas allege that Allstate breached the contract by (1) failing to reasonably evaluate their claims; (2) improperly denying their claims; (3) failing to provide coverage; and (4) failing to settle within the policy limits. ECF No. 1-1 at ¶ 14. Allstate argues that it is entitled to summary judgment because (1) the Buccas failed to fully cooperate with Allstate during its investigation, which is a condition precedent to coverage under the policy, and (2) the Buccas failed to supply proof of ownership of the jewelry, other than the allegedly fraudulent receipts.

In the event of a loss, Allstate's policy requires the Buccas to "give [Allstate] all accounting records, bills, invoices and other vouchers, or certified copies, which [it] may reasonably request to examine." ECF No. 40-5 at 10. It also requires the Buccas to "submit to an examination under oath, separately and apart from any other person" "as often as [Allstate] reasonably requires." *Id.* Allstate argues that the Buccas failed to cooperate because Lilian did not sit for an EUO and neither Anthony nor Lilian provided (1) sufficient documentation of

ownership (i.e., Allstate contends that the Buccas provided only receipts and an appraisal); (2) photographs of anyone wearing the jewelry; (3) information regarding the Buccas' financial condition (i.e., 401k statements and Lilian's 2012 tax return); (4) alarm systems records; and (5) cell-phone records.

The Buccas respond that they cooperated to the best of their ability and provided Allstate with a police report, two recorded statements, Anthony's EUO, receipts, and an appraisal of the jewelry. They also argue that Lilian did not sit for an EUO because Allstate did not respond to her requests to schedule a time for it before she moved to the Philippines. In reply, Allstate appears to argue that the move itself renders Lilian in violation of the policy because an EUO can now be done only by video and there is no way for Allstate to verify that she is "separate and apart" from Anthony during the EUO.

The record does not support Allstate's assertion that Lilian refused to sit for an EUO, just that her EUO never occurred. The Buccas and Allstate exchanged several letters and emails in an attempt to schedule her EUO, but the parties could not agree on a time that was mutually convenient for everyone involved. Nor am I persuaded that Lilian's relocation to the Philippines constitutes a de facto refusal to sit for an EUO, as Allstate contends. It is not unheard of for a party to depose another party by video from another country. Indeed, the Federal Rules of Civil Procedure expressly provide for this. Steps could be taken to safeguard that Lillian is apart from Anthony during the examination, for instance through the use of a neutral observer. It is up to the jury to decide whether Lillian breached her policy obligations in this regard, and whether any such breach is material. "Whether a party has breached a contract and whether the breach is material are questions of fact." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v. Eighth Judicial District Court*, 823 P.2d 848, 850 (Nev. 1974)). Allstate's assertion that it cannot ensure that Lilian would be truthful or alone if Allstate were to take her EUO from the Philippines is, therefore, insufficient to justify summary judgment.

Similarly, the record does not support Allstate's assertion that the Buccas refused to cooperate by failing to produce 401(k) statements, tax returns, cell-phone records, alarm system

records, or photographs of the jewelry. The policy requires the Buccas to comply with Allstate's "reasonable requests" and produce "all accounting records, bills, invoices and other vouchers" that relate to the insured property. ECF No. 40-5 at 10. Whether the Buccas' alleged failure to supply documents constitutes a material breach of the policy is for the jury to decide.

There are also several disputed facts concerning the Buccas' alleged ownership of the jewelry that preclude summary judgment on their breach of contract claim. Allstate presented evidence indicating that the Buccas never owned the jewelry, including Holdo's statements that the Buccas were not his customers, his store did not sell the type of jewelry in question, and the receipts are not legitimate. The Buccas argue that Holdo is not a credible witness, citing his testimony that (1) the Quick Books records are not 100% accurate; (2) he did not prepare the Quick Books, and (3) at one point, he misplaced $1.4 million in inventory. The Buccas also proffer statements from the Buccas and Baron (which Allstate attempts to impeach) detailing the Buccas' trips to Holdo's store. These disputed facts and credibility determinations are not appropriate for summary judgment. *See Anderson*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ."). I therefore deny Allstate's motion for summary judgment with regard to the breach of contact claim.

B. **Breach of the Covenant of Good Faith and Fair Dealing**

To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 122 Nev. 455, 134 P.3d 698, 702 (Nev. 2006) (citation omitted). Whether a party has acted in good faith is a question of fact. *Mitchell v. Bailey and Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980).

The Buccas allege that Allstate breached the covenant of good faith and fair dealing by refusing the settle their claims within the policy limit and denying coverage. Allstate moves for

summary judgment, arguing that this claim is factually unsupported and the Buccas "failed to allege how defendants deliberately interfered with [their] right to receive benefits." ECF No. 40 at 20. The Buccas respond that they will supply facts to support this claim—i.e., Allstate's alleged refusal to communicate with the Buccas and their decision to conduct a one-sided investigation that relied on Holdo's version of the facts.

But this response is insufficient to prevent summary judgment. Because Allstate satisfied its initial burden of showing the absence of a genuine issue of material fact, the Buccas were required to set forth specific facts demonstrating a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 323; *Fairbank*, 212 F.3d at 531. I therefore grant Allstate's motion for summary judgment with regard to the Buccas' claim for breach of the covenant of good faith and fair dealing.

### C. Unjust Enrichment

"The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). As a result, an unjust enrichment claim is "not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.*

Allstate moves to dismiss because the policy is an express contract and it requires Allstate to return the Buccas' premiums if Allstate elects to void the contract. The Buccas respond that the claim is properly pleaded as an alternative theory of recovery because Allstate may void the contract if it proves that the Buccas obtained it by fraud, in which case the provision requiring Allstate to return the premiums would also be void. *See Anderson v. Reynolds*, 588 F. Supp. 814, 818 (D. Nev. 1984) (citing *Havas v. Alger*, 461 P.2d 857, 859 (Nev. 1969) ("If the execution of a contract is induced by fraud, the contract is voidable.").

////

At this stage of proceedings, the Buccas' unjust enrichment claim is properly pleaded as an alternative theory of recovery because Allstate may attempt to void the contract and retain the premiums. However, if Allstate affirms the contract at a later date, the Buccas' unjust enrichment claim would be subject to dismissal. I therefore deny Allstate's motion for summary judgment with regard to the Buccas' unjust enrichment claim.

### D.  Bad Faith

"An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (quoting *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). Such conduct is a breach of the covenant of good faith and fair dealing, and constitutes actionable bad faith. *Id.* "To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998).

Allstate discovered allegedly fraudulent receipts and obtained testimony from Holdo that the Buccas did not buy the jewelry from his store. Thus, Allstate had a reasonable basis for disputing coverage. The Buccas respond that Allstate conducted a one-sided investigation that intentionally overlooked Holdo's bias. They also assert that Allstate failed to adequately communicate with the Buccas and has not proven that any fraud occurred.

It is not necessary for Allstate to show that it conducted a perfect investigation, arrived at the right conclusion, or to show that actual fraud occurred. At this stage, Allstate is required to show only that it had a "reasonable basis for disputing coverage." *See Powers*, 962 P.2d at 604. Allstate discovered several indications of fraud, and thus did not act in bad faith in denying the claim. *See Hansen v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-cv-01434-MMD, 2012 WL 6204822, at *9 (D. Nev. Dec. 12, 2012) ("The genuine issue rule in the context of bad faith claims allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under

the plaintiff's version of the facts there is a genuine issue as to the insurer's liability.") (citations omitted). I therefore grant Allstate's motion for summary judgment with regard to the Buccas' bad-faith claim.

### D. Motion for Leave to Supplement

Finally, the Buccas seek leave to supplement their opposition with a deposition transcript. ECF No. 57. The Buccas' motion is untimely because it was filed eight months after Allstate moved to dismiss and over four months after the deposition was taken. *See id.* Additionally, the motion fails to cite to the relevant portions of the deposition transcript, which is over 100-pages long. It is not my burden to search the record for supporting information. *See Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994) ("District judges are not archeologists. They need not excavate masses of papers in search of revealing tidbits."). I therefore deny the Buccas' motion for leave.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant Allstate Indemnity Insurance's motion to dismiss **(ECF No. 40) is converted into a motion for summary judgment and is GRANTED in part and DENIED in part**.

IT IS FURTHER ORDERED that Allstate Indemnity Insurance is granted summary judgment on plaintiffs Anthony and Lilian Buccas' claims for breach of the covenant of good faith and fair dealing and bad faith. Summary judgment is denied as to the Buccas' claims for breach of contract and unjust enrichment.

IT IS FURTHER ORDERED that Anthony and Lilian Buccas' motion for leave **(ECF No. 57) is DENIED**.

DATED this 1st day of September, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE